## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YDD CORPORATION LLP<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Court No. 25-00100 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade ("CIT"), Plaintiff YDD Corporation LLP ("Plaintiff or "YDD"), by and through their attorneys, hereby allege as follows:

## DETERMINATION TO BE REVIEWED

1.  Plaintiff contests certain aspects of the U.S. Department of Commerce's (the "Department") final determination in the antidumping investigation covering Ferrosilicon from Kazakhstan, published in the *Federal Register* on March 28, 2025. *See Final Affirmative Determination of Sales at Less-Than-Fair-Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 14077 (Dep't Commerce Mar. 28, 2025) ("*Final Determination*"), and accompanying Issues and Decision Memorandum (Dep't Commerce Mar. 21, 2025) ("*Final IDM*").

## JURISDICTION

2.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1581(c) because this action is commenced under 19 U.S.C. § 1516a(a)(2)(B)(iii).

**TIMELINESS OF ACTION**

3.  The Department's *Final Determination* was published in the *Federal Register* on March 28, 2025. The resulting Antidumping Duty Order was published on May 20, 2025. *See Ferrosilicon From Malaysia: Amended Final Determination of Sales at Less Than Fair Value; Ferrosilicon From Brazil, Kazakhstan, and Malaysia: Antidumping Duty Orders,* 90 Fed. Reg. 21456 (Dep't Commerce May 20, 2025) ("the Antidumping Duty Order"). Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II), Plaintiff commenced this action by filing a Summons with this Court on June 6, 2025, which is within thirty days of the publication of the Antidumping Duty Order. Plaintiff files this Complaint on July 7, 2025, which is within thirty days of the filing of the Summons. Thus, this action is timely filed in accordance with 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and within the time limits specified in and Rules 3(a)(2) and 6(a) of the Rules of this Court.

**STANDING**

4.  Plaintiff is a foreign producer and exporter of the subject merchandise and is therefore an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A). Plaintiff was a mandatory respondent in the underlying antidumping investigation that led to the determination being challenged, responded to all of the Department questionnaires during the course of that proceeding, and submitted a case brief and rebuttal brief to the Department in connection with that proceeding, and thus actively participated in the agency proceeding. Accordingly, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C.§ 2631(c).

## STATEMENT OF FACTS

5. On March 27, 2024, CC Metals and Alloys, LLC ("CCMA") and Ferroglobe USA, Inc. ("Ferroglobe") (collectively, "Petitioners") filed an antidumping and countervailing duty petition alleging that imports of Ferrosilicon from Brazil, Malaysia, the Republic of Kazakhstan, and the Russian Federation were being, or were likely to be, sold in the United States at less than fair value. The Department initiated its antidumping duty and countervailing duty investigations on April 17, 2024. *See Initiation of Less-Than-Fair-Value Investigations,* 89 Fed. Reg. 31137 (Dep't Commerce Apr. 24, 2024); *Initiation of Countervailing Duty Investigations*, 89 Fed. Reg. 31133 (Dep't Commerce Apr. 24, 2024).

6. The Department selected YDD and TNC Kazchrome JSC ("Kazchrome") as mandatory respondents in the antidumping investigation. *See* Memorandum from Mira Warrier, International Trade Compliance Analyst, Office II, AD/CVD Operations, to The File, re: *Respondent Identification* (Dep't Commerce May 8, 2024); *see also* Memorandum from Minoo Hatten, Director, Office II, AD/CVD Operations, to James Maeder, Deputy Assistant Secretary, AD/CVD Operations, re: *Respondent Identification Memorandum – Clarification* (Dep't Commerce June 10, 2024).

7. On June 10, 2024, the Department issued an initial questionnaire to YDD. *See* Letter from Genevieve Coen, Program Manager, Office II, AD/CVD Operations, to YDD Corporation LLP, c/o Matthew McConkey, Mayer Brown LLP, re: *Less-Than-Fair-Value-Investigation of Ferrosilicon from Kazakhstan Request for Information* (Dep't Commerce June 10, 2024).

8. YDD filed its response to Section A of the Department's questionnaire on July 10, 2024, and its response to Section C of the Department's questionnaire on July 31, 2024. *See* Letter from Sydney Mintzer, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *YDD Corporation*

*LLP—Section A Questionnaire Response* (Dep't Commerce July 10, 2024) ("YDD Section A Response"); Letter from Sydney Mintzer, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *YDD Corporation LLP—Section C Questionnaire Response* (Dep't Commerce July 31, 2024) ("YDD Section C Response").

9. In its Section A response, YDD clarified that one of its two channels of distribution for sales of subject merchandise to the United States consisted of sales that "were intended to be transshipped to the Canadian market" and were in fact destined for the Canadian market pursuant to the purchase terms with the customer. *See* YDD Section A Response at 15-16. In its Section C response, YDD noted that it included these sales in its U.S. sales database but reiterated that these sales should not be included in the Department's dumping margin calculation because they were destined for the Canadian market. *See* YDD Section C Response at C-16 to C-17.

10. On November 6, 2024, the Department issued the preliminary determination of the antidumping investigation in the *Federal Register*. *See Ferrosilicon From Kazakhstan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 88007 (Dep't Commerce Nov. 6, 2024) ("*Preliminary Determination*"), and accompanying Issues and Decision Memorandum (Dep't Commerce Oct. 31, 2024) ("Prelim. Decision Memo"). The Department determined that YDD's weighted-average dumping margin for the period of investigation was 4.67%, while Kazchrome's margin was 6.20%. In the *Preliminary Determination*, the Department relied on partial facts available with adverse inferences in calculating YDD's margin because, according to the Department, YDD failed to notify the Department of an affiliation with one of its U.S. customers through the

corporate positions of an individual who held positions in YDD and its affiliates as well as in the corporate structure of a U.S. customer during the period of investigation ("POI"). *See Preliminary Determination* and Prelim. Decision Memo.

11.     On November 8, 2024, YDD filed a timely allegation of ministerial error in response to the *Preliminary Determination*. *See* Letter from Nikolay Mizulin, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *YDD Corporation LLP—Ministerial Allegation* (Dep't Commerce Nov. 8, 2024). YDD alleged that despite the application of the "average-to-average" method for calculating the weighted-average dumping margin, the Department set the dumping margin for sales with negative margins to zero.

12.     The Department conducted a verification YDD's reported sales in Kazakhstan from November 11, 2024, through November 15, 2024, and a verification of YDD's reported costs in Kazakhstan from November 25, 2024, through November 29, 2024. Memorandum from Mira Warrier, Int'l Trade Compliance Analyst, and Brittany Bauer, Sr. Int'l Trade Compliance Analyst, to The File, re: *Verification of the Sales Responses of YDD Corporation LLP; Asisa FerroAlloys LLP; and KazSolicon Metallurgical Combine LLP (collectively, the YDD Single Entity) in the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan* (Dep't Commerce Dec. 23, 2024); Memorandum from Heidi Schriefer, Supervisory Accountant, and Delwyn Mandapathilm, Senior Accountant, to The File, re: *Verification of the Cost Response of YDD Corporation LLP in the Less-Than-Fair-Investigation of Ferrosilicon from Kazakhstan* (Dep't Commerce Feb. 6, 2025).

13.     On December 9, 2024, the Department determined that YDD's ministerial error allegation did not constitute a ministerial error within the meaning of 19 C.F.R. 351.224(f). *See* Memorandum from Samantha Kinney, Senior International Trade Compliance Analyst, Office

II, AD/CVD Operations, to Minoo Hatten, Director, Office II, AD/CVD Operations, re: *Analysis of Ministerial Error Allegation in the Preliminary Determination* (Dep't Commerce Dec. 9, 2024).

14. On January 14, 2025, YDD submitted a Case Brief discussing sales issues raised in the *Preliminary Determination*. *See* Letter from Nikolay Mizulin, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *Sales and General Issues Case Brief* (Dep't Commerce Jan. 14, 2025). In its Case Brief, YDD raised three affirmative arguments with respect to these sales issues in the *Preliminary Determination*. First, the Department included sales that were destined to Canada as U.S. sales in its margin calculation, which YDD argued is contrary to the Department's normal practice. Second, the Department applied adverse facts available ("AFA") on those sales to Canada because YDD did not disclose a relationship between the executive director of the customer to which the sales to Canada had been made and YDD's affiliates Asia FerroAlloys LLP ("ASIA") and KazSilicon Metallurgical Combine LLP ("KazSilicon"), which YDD argued was improper because YDD fully cooperated with the Department's investigation. Third, YDD argued that the Department incorrectly set negative margins calculated under the average-to-average methodology to zero in the calculation of the overall weighted-average margin calculation.

15. On January 14, 2025, Petitioners submitted a Case Brief addressing these issues in which they argued that the Department should continue to apply adverse facts available to calculate YDD's dumping margin. Letter from Adam H. Gordon, The Bristol Group PLLC, to the U.S. Dep't of Commerce, re: *Ferrosilicon from Kazakhstan: Case Brief* (Dep't Commerce Jan. 14, 2025). In addition, Petitioners argued, if the Department continues to apply partial adverse facts available to YDD, it should continue to set negative margins to zero.

16.     On March 28, 2025, the Department issued the *Final Determination* of the antidumping investigation in the *Federal Register*. The Department calculated an antidumping duty margin of 6.01 percent for YDD. *See Final Determination*. In the *Final Determination*, the Department continued to treat YDD's sales intended for the Canadian market as U.S. sales and continued to apply partial AFA to YDD's sales to a specific customer. *See Final IDM*. The Department also declined to amend the *Preliminary Determination* with respect to sales with negative dumping margins. *See Final IDM*.

17.     On March 31, 2025, YDD filed a timely allegation of ministerial error in response to the *Final Determination*. *See* Letter from Nikolay Mizulin, Mayer Brown LLP, to the U.S. Dep't of Commerce, re: *YDD Corporation LLP – Ministerial Error Allegation* (Dep't of Commerce March 31, 2025). YDD alleged that the Department made an error in calculating the highest individual margin for the application of partial AFA.

18.     On April 11, 2025, the Department determined that the issue raised in YDD's ministerial error allegation was methodological in nature and maintained the result found in the *Final Determination*. *See* Memorandum from Mira Warrier, International Trade Compliance Analyst, Office II, AD/CVD Operations, to Minoo Hatten, Director, Office II, AD/CVD Operations, re: *Analysis of Ministerial Error Allegation in the Final Determination* (Dep't of Commerce April 11, 2025).

19.     On May 20, 2025, the Department issued the Antidumping Duty Order on Ferrosilicon from Kazakhstan.

20.     This appeal followed.

## COUNT 1

21.  Paragraphs 1 – 18 are hereby incorporated by reference.

22.  The Department's inclusion of sales that were destined for Canada in its calculation of YDD's dumping margin is not supported by substantial evidence and is otherwise not in accordance with law. YDD demonstrated throughout the course of the investigation that these sales were contractually intended as sales to Canada. YDD knew that the product was destined for Canada before it was exported to the United States. Thus, under the Department's knowledge test and normal practice, these sales should not have been considered as sales to the United States.

## COUNT 2

23.  Paragraphs 1 – 20 are hereby incorporated by reference.

24.  The Department's application of partial AFA in calculating YDD's dumping margin is not supported by substantial evidence and is otherwise not in accordance with law. YDD cooperated to the best of its ability with the Department throughout the investigation, and the Department may not apply AFA to a cooperating party. Moreover, the Department's conclusion that the executive director of one of YDD's customers also had a "controlling position" at the parent company of YDD's affiliates, ASIA and KazSilicon, is not supported by substantial evidence and is otherwise not in accordance with law because that individual's role at the parent company was not a "controlling position" at the parent company of ASIA and KazSilicon as a matter of law.

## COUNT 3

25.  Paragraphs 1 – 22 are hereby incorporated by reference.

26.     The Department's decision to apply "zeroing" in the calculation of YDD's weighted-average dumping margin is not supported by substantial evidence and is otherwise not in accordance with law.  Based on the results of the differential pricing analysis, the Department determined "to apply the average-to-average method for *all* U.S. sales to calculate the weighted-average dumping margin for the YDD Single Entity."  However, in practice, the Department did not use the average-to-average method because it set negative margins for individual sales to zero when calculating the final weighted-average margin.

## COUNT 4

27.     Paragraphs 1 – 24 are hereby incorporated by reference.

28.     The Department's calculation of the portion of YDD's dumping margin based on partial AFA is not supported by substantial evidence and is otherwise not in accordance with law.  As partial AFA, the Department applied what it deemed to be the highest transaction-specific margin to the sales involving the issue stated in Count 2.  However, as detailed in YDD's ministerial error comments in respect to the *Final Determination*, the margin applied is not the actual highest transaction-specific margin and thus, is not supported by the agency record.

## REQUEST FOR JUDGMENT AND RELIEF

29.     WHEREFORE, Plaintiff YDD respectfully requests that this Court enter judgment in its favor and against the Defendant, declare that the Department erred in the *Final Determination* as alleged herein, and remand this matter to the Department to issue liquidation instructions that recognize that the rate is not applicable to any period of review YDD enters, and grant Plaintiff such further relief as the Court may deem appropriate.

Dated: July 7, 2025                                     Respectfully submitted,

                                                        /s/Matthew J. McConkey

                                                        Counsel to YDD Corporation LLP

                                                        Mayer Brown LLP
                                                        1999 K Street NW
                                                        Washington, DC 20006
                                                        (202)-263-3235

## CERTIFICATE OF SERVICE

      I, Matthew J. McConkey, certify that on July 7, 2025, I notified the interested parties listed below, who were party to the decision being contested, by mailing copies of the foregoing Summons by certified mail, return receipt requested.

Adam Henry Gordon, Esq.
Representative of CC Metals and Alloys, LLC and Ferroglobe USA, Inc.
The Bristol Group PLLC
1707 L Street, NW
Suite 1050
Washington, DC 20036
Phone: 202-991-2701
Email: adam.gordon@bristolgrouplaw.com

Christine M. Streatfeild, Esq.
Representative of TNC Kazchrome JSC
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078
Phone: 202-452-7000
Email: christine.streatfeild@bakermckenzie.com

Yohai Baisburd, Esq.
Representative of TELF AG
Cassidy Levy Kent (USA) LLP
2112 Pennsylvania Avenue, NW Suite 300
Washington, DC 20037
Phone: 202-567-2306
Email: ybaisburd@cassidylevy.com