# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE JENNIFER CHOE-GROVES

| | |
|---|---|
| YDD CORPORATION LLP AND TNC KAZCHROME JSC, <br><br>     Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>     Defendant, <br><br> and <br><br> CC METALS AND ALLOYS, LLC AND FERROGLOBE USA, INC., <br><br>     Defendant-Intervenors. | Consol. Ct. No. 25-00100 <br><br> **NON-CONFIDENTIAL VERSION** <br><br> **Business Proprietary Information Contained in Brackets ("[]") and Removed From Pages 5 and 11-12** |

## REPLY BRIEF IN SUPPORT OF CONSOLIDATED PLAINTIFF TNC KAZCHROME JSC'S RULE 56.2

## <u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Christine M. Streatfeild

**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Consolidated Plaintiff TNC Kazchrome JSC*

April 10, 2026

## **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................1

II.  ARGUMENT .....................................................................................................3

    A.  Defendant Fails in Its Attempt to Contradict Kazchrome's Position on Commerce's Date-of-Sale Findings.................................................................3

    B.  Defendant-Intervenors Conflate a Contractual Pricing Framework with a Specified Contractual Fee and Mischaracterize Commerce's Determination as to Whether There Was a Meeting of the Minds on the Material Terms of Sale on the Shipment Date................................................................................7

III.  CONCLUSION................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantic Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) .................................................................. 9, 14

*Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*,
625 F. Supp. 2d 1339 (Ct. Infl Trade 2009) .................................................*passim*

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003) ...................................................................9, 14

*Nucor Corp. v. United States*,
612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009).................................................9, 14

*Sahaviriya Steel Industries Public Co. Ltd. v. United States*,
714 F. Supp. 2d 1263 (Ct. Int'l Trade 2010), aff'd, 649 F.3d 1371
(Fed. Cir. 2011)............................................................................................4

*Toyo Kohan Co. v. United States*,
No. 24-00261, 2025 Ct. Intl. Trade LEXIS 147, at *10 (Ct. Int'l
Trade Oct. 23, 2025) ...................................................................................12

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951)....................................................................................9, 15

**Administrative Determinations**

*Ferrosilicon From Kazakhstan: Preliminary Affirmative
Determination of Sales at Less Than Fair Value, Preliminary
Negative Determination of Critical Circumstances, Postponement
of Final Determination, and Extension of Provisional Measures*,
89 Fed. Reg. 88,007 (Dep't of Commerce, Nov. 6, 2024)......................11, 12, 15

## I.    INTRODUCTION

TNC Kazchrome JSC ("Kazchrome" or "Consolidated Plaintiff") respectfully submits this reply to the response briefs filed in this case by defendant the United States ("Defendant" or "the government") and defendant-intervenors CC Metals and Alloys, LLC and Ferroglobe USA, Inc (collectively, "Defendant-Intervenors") regarding the Final Determination issued by the U.S. Department of Commerce ("Commerce") in the antidumping duty ("AD") investigation of ferrosilicon from the Republic of Kazakhstan (Case No. A-834-812).

Consolidated Plaintiff has demonstrated in its opening brief that Commerce erroneously used the shipment date as the date of sale for Kazchrome's U.S. sales, even though the record demonstrated that the final invoice date was the date upon which the material terms of sale were finalized.  Commerce's date of sale determination is unsupported by substantial evidence on the record and otherwise not in accordance with the law.  Specifically, Commerce's decision to identify the date of sale for Kazchrome's U.S. sales as the date on which the product was shipped, rather than when the final terms of sale were established, ignores and contradicts substantial record evidence demonstrating that the appropriate date of sale for Kazchrome's U.S. sales was the final invoice date.

In its response brief, the government defends Commerce's selection of the shipment date as the date of sale for Kazchrome's U.S. sales in this investigation by

simply restating unsupported assertions from the Final Issues and Decision Memorandum ("IDM") accompanying Commerce's Final Determination. Defendant does not directly address the arguments advanced by Kazchrome in its opening brief, namely, that a "meeting of the minds" between Kazchrome and TELF on the material terms of sale did not occur until Kazchrome accepted TELF's pricing schedule and issued the final invoice. As discussed in this reply, Defendant's failure to engage with Kazchrome's arguments reveals that, in fact, Commerce never took into account the evidence supporting Kazchrome's position that the final price of Kazchrome's U.S. sales to TELF was not established until Kazchrome accepted TELF's pricing schedule and issued the final invoice. Before Kazchrome accepted TELF's pricing schedule and issued the final invoice, there was no "meeting of the minds" between the parties as to a material term of sale— *i.e.*, the final price. Commerce made no determination as to whether it considered the final price to be a material term of sale, but instead concluded – without support or analysis – that the material terms of sale were set prior to the final invoice. Because Commerce failed to consider this key evidence, and instead relied on mere assertion, Commerce's determination is not supported by substantial evidence on the record and is otherwise contrary to law.

At the same time, Defendant-Intervenors argue that Commerce lawfully ignored the contractual clauses between Kazchrome and TELF demonstrating that

2

the material terms are not set until the date of the final invoice because this Court has found that a penalty fee incurred under a long-term contract does not alter material terms. *See* Def. Int. Br. at 42-44. The Defendant-Intervenors further rely on cases in which the party is advocating for a date *earlier* than the invoice date, which are clearly distinguishable from the issues presented here. *See* Def. Int. Br. at 39-45. Ultimately, Defendant-Intervenors fail in their attempt to advocate that the shipment date is the date in which the material terms were set because Defendant-Intervenors are limited to restating the unsupported assertions in Commerce's determination and subsequently characterizing those assertions as providing a lawful basis for Commerce's determination. The Defendant-Intervenors' characterizations of Commerce's determination cannot now remedy a determination that is itself not supported by substantial evidence.

## II.    ARGUMENT

### A.    Defendant Fails in Its Attempt to Contradict Kazchrome's Position on Commerce's Date-of-Sale Findings

In its response brief, the government asserts that Commerce explained that where shipment precedes invoicing and the record does not show that price or other material terms remained subject to change after shipment, Commerce's practice is to use shipment date as the date of sale. *See* Def. Br. at 32. In doing so, however, Commerce never determined whether the material terms were set at the

3

time of shipment and completely ignored evidence demonstrating that the material terms may change.

The government does not engage directly with the evidence and argument that Kazchrome presented in its opening brief because Commerce did not adequately take it into account in the final determination. Through such evidence and argument, Kazchrome clearly demonstrated why Commerce should have selected the final invoice date as the date of sale for Kazchrome's U.S. sales. Kazchrome recalled Commerce's obligation under 19 C.F.R. § 351.401(i) to use "the date on which the exporter or producer establishes the material terms of sale" as the date of sale, and cited precedent from this Court explaining that the parties must have reached "*a meeting of the minds* on the material terms of sale" for such terms to be "established" within the meaning of 19 C.F.R. § 351.401(i). *See* Kazchrome's Opening Brief at 18 (citing *Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1303 (Ct. Int'l Trade 2009) ("*Nucor*") (emphasis added)). Kazchrome explained why Kazchrome and TELF did not reach a "meeting of the minds" on price—which is a material term of sale, *see, e.g.*, *Sahaviriya Steel Industries Public Co. Ltd. v. United States*, 714 F. Supp. 2d 1263, 1280 (Ct. Int'l Trade 2010), *aff'd*, 649 F.3d 1371 (Fed. Cir. 2011)—until Kazchrome accepted TELF's pricing schedule and communicated that acceptance by issuing the final invoice to TELF. Specifically, Kazchrome stressed that, before its acceptance of

4

TELF's pricing schedule, Kazchrome "**[**

                                             **]**." Kazchrome's Opening Brief at 19.  In

other words, "{t}he price of the merchandise . . . remained subject to

renegotiation," and therefore was not set in the minds of the parties, until

Kazchrome's formal acceptance of the pricing schedule and issuance of the final

invoice.  Kazchrome's Opening Brief at 19.

In its opening brief, Kazchrome also explained that, assuming Commerce

could have declined to use the final invoice date as the date of sale (which, as

explained above, it could not have), it should at least have used the title transfer

date.  Kazchrome demonstrated why Commerce acted unlawfully when it found:

(1) that the record lacked "documentation to support the title transfer dates;" (2)

that the absence of the title transfer dates from Kazchrome's U.S. sales database

justified its complete rejection of those dates; and (3) that Kazchrome had not

argued "for the use of the title transfer date as an alternative date of sale should

Commerce decide not to use the final invoice date."  Kazchrome's Opening Brief at

20.  Kazchrome demonstrated that Commerce's first finding was unlawful because

Kazchrome had, in fact, "reported all of the dates of title transfer for its U.S. sales

in the **[**                         **]** Report included in its original and revised sales

reconciliations" and "provided primary documentation of title transfer dates . . . in

its sales trace documentation and Sales Verification Exhibits."  Kazchrome's

5

Opening Brief at 20-21.  Kazchrome then demonstrated that Commerce's second finding was unlawful under this Court and the U.S. Court of Appeals for the Federal Circuit's precedent concerning deficient submissions in antidumping and countervailing duty proceedings.  *See* Kazchrome's Opening Brief at 21-22. Finally, Kazchrome demonstrated that Commerce's third finding was blatantly incorrect because Kazchrome "explicitly requested that Commerce use the title transfer date" if it (wrongfully) decided not to use the final invoice date in its case brief in the underlying investigation.  *See* Kazchrome's Opening Brief at 22-23.  In sum, Kazchrome demonstrated why Commerce could not have rejected the title transfer date as the date of sale if it (improperly) chose to reject the final invoice date.  Stated differently, Kazchrome explained why Commerce could not, under any circumstances, have selected the shipment date as the date-of-sale for Kazchrome—and therefore Commerce's decision to do so was unsupported by substantial evidence and unlawful.

The government does not offer any evidence or argument that calls Kazchrome's position into question.  In its response brief, the government never challenges the fact that the price of Kazchrome's U.S. sales to TELF remained subject to renegotiation before Kazchrome's formal acceptance of TELF's pricing schedule and issuance of the final invoice.  Moreover, the government does not

6

engage with any of Kazchrome's arguments that Commerce acted unlawfully when it rejected the title transfer dates as an alternative to the final invoice dates.

In the absence of any real challenge to Kazchrome's position, the government's bare assertions that Commerce's date-of-sale findings for Kazchrome were lawful should be rejected and the determination should be remanded to Commerce for further consideration.

**B. Defendant-Intervenors Conflate a Contractual Pricing Framework with a Specified Contractual Fee and Mischaracterize Commerce's Determination as to Whether There Was a Meeting of the Minds on the Material Terms of Sale on the Shipment Date**

In its response brief, Defendant-Intervenors rely heavily on this Court's holding in *Habas Sinai* to make the assertion that a change in price does not materially change the terms of a sale. *See* Def. Int. Br. at 40-45 (citing *Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 625 F. Supp. 2d 1339 (Ct. Infl Trade 2009) ("*Habas Sinai*")). Defendant-Intervenors state that this Court held "that the contractual nature of a late delivery fee altering the final price did not constitute a material change in the term of sale." *See* Def. Int. Br. at 40, 44. On its face, a penalty fee is obviously unlike an open price subject to renegotiation, and thus *Habas Sinai* is inapposite here. In *Habas Sinai*, this Court held that Commerce adequately explained its determination that the penalty clause at issue was mere routine contract boilerplate, of no real significance, and was supported by the record. *See* 625 F. Supp. 2d at 1376-77. Therefore, this Court in *Habas*

*Sinai* did not purport to establish a rule as to whether a final price change constitutes a material change to the terms of the sale because that question was not before the Court.

Defendant-Intervenors likewise cite to *Nucor* and note that this Court expressed that Commerce must consider whether the parties had the expectation that the material terms of sale were fixed on the date of contract even when there is evidence of a change in a material term —*see* Def. Int. Br. at 44; *see also Nucor* at 1311-12 —particularly when Commerce is looking beyond the invoice date to determine whether an *earlier* date represents the point at which the parties reached a meeting of the minds on the material terms of sale. *See Nucor* at 1307. The facts of the instant proceeding differ from both *Habas Sinai* and *Nucor* in that both cases involved parties seeking to rebut Commerce's presumption of using the invoice date as the date of sale for an *earlier* date.

In *Nucor*, this Court emphasized that, despite its regulatory presumption and default practice, Commerce is still required to undertake a factual analysis of the expectations and conduct of the contracting parties to ascertain when they reached a true meeting of the minds on the material terms of sale. *See Nucor* at 1309. Commerce did not undertake such a factual analysis here. As explained in *Habas Sinai*, a contractual clause would constitute "evidence" that material contract terms could change only if the clause was of significance. *See Habas Sinai* at n.36.

8

Defendant-Intervenors claim that "Commerce was correct in determining that at the date of shipment the material terms of sale were set" and yet Commerce made no such finding, nor did it address the evidence supporting Kazchrome's position. *See* Def. Int. Br. at 44.  Commerce's failure to take into account this evidence does not satisfy the "substantial evidence" standard, under which Commerce must take into account "the entire record, including whatever fairly detracts from the substantiality of the evidence."  *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984); *see also Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).  And, in turn, this Court may not sustain Commerce's determination "without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951).

In the Final IDM, Commerce stated that "based on record evidence Commerce found that the material terms of sale for Kazchrome's U.S. sales were set prior to the final invoice" citing to the Decision Memorandum accompanying the *Preliminary Determination* at 15. *See Issues and Decision Memorandum for the Final Affirmative Determination of the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan*, Case No. A-834-812 (Mar. 21, 2025) ("Final IDM") at 7, P.R. 272; *see also Ferrosilicon from Kazakhstan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative*

*Determination of Critical Circumstances, Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed. Reg. 88,007 (November 6, 2024) ("*Preliminary Determination*"), P.R. 199. Due to the proprietary nature, the details of Kazchrome's accurate date of sale for its U.S. sales is contained in Kazchcrome's Preliminary Margin Calculation Memorandum. *See Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Ferrosilicon from Kazakhstan*, Case No. A-834-812 (Oct. 31, 2024) ("Preliminary IDM") at 15, P.R. 184; *see also Memorandum to The File from Samantha Kinney, Senior International Trade Compliance Analyst, AD/CVD Operations, Office II, Preliminary Determination Margin Calculation for TNC Kazchrome JSC*, Case No. A-834-812 (Oct. 31, 2024) ("Preliminary Margin Calculation Memo"), P.R. 186/C.R. 331.

Commerce preliminarily determined in the Preliminary Margin Calculation Memo that the final price is set on the date of title transfer and therefore, the material terms of sale were determined on the date of title transfer. *See* Preliminary Margin Calculation Memo at 3. Commerce determined that because this date was not reported for Kazchrome's U.S. sales, it would use the earlier of invoice date or shipment date as the date of sale in both the home and U.S. markets. *Id*. At no point did Commerce determine that the material terms of sale were determined on the shipment date as Defendant-Intervenors contend, in fact it

10

determined that the material terms were determined *after* the shipment date (i.e.,

the date of title transfer).

Further, Defendant-Intervenors characterize the contractual clauses between

Kazchrome and TELF as agreed-upon "price-settlement" mechanisms that "did not

re-open negotiations or alter the fundamental bargains between the parties"  and

likened those clauses to the penalty clause in *Habas Sinai*.  *See* Def. Int. Br. at 42.

These characterizations are inaccurate.  Under the contract, Kazchrome **[**


**]**.  Kazchrome's October 16 Submission, Attachment I, P.R. 158/C.R. 259

(**[**



**]**) (emphasis added).  The price of the merchandise

therefore remained subject to renegotiation, and thus was not established, until

Kazchrome's formal acceptance of TELF's schedule.

Moreover, the relevant contractual clause at issue in *Habas Sinai* involved a

predetermined fixed contractual penalty fee for late delivery, whereas the potential

changes in the material terms here could include adjustments for "**[**

11

]." *See* Kazchrome's October 16, 2024 Submission at Attachment I, P.R. 158/C.R. 259. While Defendant-Intervenors attempt to conflate price adjustment possibilities under the Pricing Schedule here to the predetermined fixed penalty fee in *Habas Sinai*, these potential adjustments are hardly "boilerplate" and of no significance; the contractual clauses here and the clause in *Habas Sinai* are simply not analogous.

This Court recently considered a more analogous pricing mechanism in *Toyo Kohan* in which Toyo Kohan offered its customer a price based on an agreed upon pricing formula that calculates the final price based on certain terms. *Toyo Kohan Co. v. United States*, No. 24-00261, 2025 Ct. Intl. Trade LEXIS 147, at \*10 (Ct. Int'l Trade Oct. 23, 2025) ("*Toyo Kohan*"). In that case, the respondent issued a summary bill to the customer based on the shipment date and the tentative price in the system at the time, and then generated a payment invoice with a final sales price. *Id*. at \*11. In *Toyo Kohan*, this Court determined that "Commerce's use of the shipment date as the date of sale… was unsupported by the record and a reasoned explanation. Careful reading of the record evidence shows that Toyo Kohan's billing documentation at the time of shipping is virtually meaningless, as it does not necessarily reflect the quantity or price in the purchase order or the final

12

invoice." *Id*. at \*13-\*14.  The Court explained that potentially different prices on the shipment documents and the final invoice suggest that "there were no changes to the inputs of the pricing formula, not that the material terms of the sale were only set at the shipment date." *Id*. at \*15.  Accordingly, a pricing formula or schedule does not necessarily determine whether the material terms of sale were set as Defendant-Intervenors claim.

Defendant-Intervenors also ignore evidence that Kazchrome could fully reject the pricing schedule and trigger renegotiation according to the contract.  *See* Kazchrome's October 16 Submission, Attachment I, P.R. 158/C.R. 259. The possible adjustment in price further supports a conclusion that a meeting of the minds has not yet occurred at the time of shipment, as Commerce itself acknowledged in the Preliminary Margin Calculation Memo, because the price can change, renegotiation may be triggered, and the pricing schedule could be fully rejected.

Defendant-Intervenors and Commerce fail to consider conflicting evidence demonstrated by the terms of the contract.  Defendant-Intervenors wholly deny that material terms were not set after the shipment date, despite Commerce's own finding of such in the Preliminary Margin Calculation Memo, and yet continue to rely on Commerce's assertion, without consideration of the evidence, that the final invoice date could not be considered in the date-of-sale analysis.  Such a reading of

13

the facts is squarely in contradiction of the substantial evidence standard.  As stated by this Court in *Nucor*, "evidence of a price change is unquestionably relevant to determining the date on which contracting parties had a 'meeting of the minds,' establishing the material terms of sale.  But, as a matter of law, discerning whether or not there was such a change does not conclude Commerce's date of sale inquiry.  Moreover, any evaluation of the record evidence supporting Commerce's conclusion on date of sale must necessarily 'take into account whatever in the record fairly detracts from [the] weight of that evidence,' including 'contradictory evidence or evidence from which conflicting inferences could be drawn.'"  *Nucor* at 1314 (internal citation omitted).  This Court further emphasized that "Commerce shall be mindful that the 'substantial evidence' standard requires consideration of the entirety of the administrative record, 'tak[ing] into account whatever in the record fairly detracts from [the] weight [of the evidence on which it relies to support its determination]' – which includes 'contradictory evidence or evidence from which conflicting inferences could be drawn.'" *See Nucor* at 1323 (internal citation omitted).  Here, Commerce failed to take into account the evidence and thus failed to satisfy the "substantial evidence" standard, under which Commerce must take into account "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984); *see also Nippon Steel Corp. v. United States*, 337

F.3d 1373, 1379 (Fed. Cir. 2003). And, in turn, this Court may not sustain Commerce's determination "without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951). Accordingly, Commerce's determination should be remanded for further consideration of this issue.

## III.    CONCLUSION

For the reasons explained above, Kazchrome respectfully requests that this Court vacate Commerce's Final Determination with respect to Kazchrome, remand the Final Determination to Commerce, and instruct Commerce to reconsider the date of sale for Kazchrome's U.S. sales on remand.

Dated: April 10, 2026                Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Consolidated Plaintiff TNC Kazchrome JSC*

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to sections 2(B)(1) and (2) of the Standard Chambers Procedures of this Court and the Amended Scheduling Order issued by the Court on January 16, 2026 (ECF No. 37), that the attached brief contains no more than 3,366 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief (Microsoft Word).

Dated: April 10, 2026

Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Consolidated Plaintiff TNC Kazchrome JSC*

1