**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

YDD CORPORATION LLP,

Plaintiff,

and

TNC KAZCHROME JSC,

Consolidated Plaintiff,

v.

UNITED STATES,

Defendant,

and

CC METALS AND ALLOYS, LLC AND FERROGLOBE USA, INC.,

Defendant-Intervenors.

Consol. Court No. 25-00100

**PUBLIC VERSION**

**Business Proprietary Information Redacted in Brackets ("[ ]") on pages 5-6**

**CONSOLIDATED PLAINTIFF'S PUBLIC COMMENTS**
**<u>IN OPPOSITION TO REMAND REDETERMINATION</u>**

Christine M. Streatfeild
Nathaniel J. Halvorson

**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

Date: October 6, 2026

*Counsel to TNC Kazchrome JSC*

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. It is Clear – and Already Determined by this Court – that Price Remained Subject to Change After Shipment .......... 3

B. The Provisional Invoice Did Not Establish the Final Price .......... 5

C. Title Transfer Confirms That Shipment Date Is Incorrect .......... 6

D. The Remand Redetermination Remains Unsupported by Substantial Evidence and Contrary to Law .......... 7

III. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlantic Sugar, Ltd. v. United States*,
744 F.2d 1556 (Fed. Cir. 1984) ..... 4

*Habas Sinai v. United States*,
625 F. Supp. 2d 1339 (Ct. Int'l Trade 2009) ..... 2, 4

*Nucor Corp. v. United States*,
612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ..... 2

*Toyo Kohan Co. v. United States*,
Consol. Ct. No. 21-00219, Slip Op. No. 23-136 (Sept. 19, 2023) ..... 5

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951) ..... 4

**Regulations**

19 C.F.R. § 351.401(i) ..... 1, 2, 6, 7

## I. INTRODUCTION

Pursuant to the U.S. Court of International Trade's opinion dated June 23, 2026, and scheduling order dated August 3, 2026, ECF Nos. 68 and 70, Consolidated Plaintiff TNC Kazchrome JSC ("Kazchrome") respectfully submits these comments in opposition to the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand filed on September 4, 2026, ECF No. 71 ("Remand Redetermination").

The Court previously held that Commerce's selection of shipment date as the date of sale for Kazchrome's U.S. sales was inadequately explained and unsupported by substantial evidence. *YDD Corporation LLP v. United States*, Consol. Court No. 25-00100, Slip Op. 26-68 (Ct. Int'l Trade June 23, 2026). In particular, this Court found the explanation inadequate because the record supported that the price in fact changed after shipment and that the final invoice date was proper. Slip Op. 26-68 at 24. The Court "observe{d}" that Kazchrome's sales reconciliation revealed a difference between the provisional invoice total revenue amount and the final invoice total revenue amount" and that "{p}rice and quantity are 'material terms,' and the discrepancy between the provisional and final invoice amounts in Kazchrome's sales reconciliation suggests that the Parties had not reached a 'meeting of the minds' as of the shipment date." Slip Op. 26-68 at 24. On remand, Commerce again selected shipment date under 19 C.F.R. § 351.401(i), notwithstanding the regulatory presumption in favor of invoice date and the verified record evidence.

The Remand Redetermination effectively ignores the Court's order. It does not cure the defect identified by the Court or account for the record—which shows that Kazchrome's price is not final at the shipment date and that the final price was not established until Kazchrome issued the final invoice. Shipment therefore cannot legally be the date on which the parties established the material term of price. The final invoice date is the date of sale for which the record reflects

Kazchrome's final price. *See* Kazchrome's BCQR at C-18–C-19 and Exhibits B-4 and C-1, P.R. 89–90/C.R. 103–111; Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Sales Verification Report at 5–7, P.R. 227/C.R. 482.

The sales process confirms this conclusion. Kazchrome issued a provisional invoice before shipment, but that invoice did not state the final price. After shipment and title transfer, TELF issued a final pricing schedule to Kazchrome. Kazchrome could object and further negotiate or otherwise update price; if Kazchrome accepted the price, it issued the final invoice, which reflected the final amount due and determined whether TELF owed an additional payment or was entitled to reimbursement. *See* Kazchrome's BCQR at C-18–C-19 and Exhibit C-1, P.R. 89–90/C.R. 103–111; Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Sales Verification Report at 5–7, P.R. 227/C.R. 482. It is clear that price was not final at the time of shipment and as such, Commerce's selection of shipment date as the date of sale fabricated a 6.20 percent margin whereas Kazchrome's actual final invoice date yields a *de minimis* margin. *See* Remand Redetermination at 2, 54; Preliminary Margin Calculation Memorandum at 3 and related calculation attachments, P.R. 188/C.R. 331; Kazchrome's Sales Case Brief at 4–6, P.R. 237/C.R. 488. Not only is the final invoice the lawful and properly-supported date of sale per Commerce's regulations and policy, but the refusal to use it has the effect of generating a margin where none exists. This Court has assessed the record and authority for date of sale in detail, and Commerce must adhere to those orders and actually account for the proper date of sale in a remand determination. *See* Slip Op. 26-68 at 16-26. Because it has not, the Court should again return this case to Commerce for a further remand determination consistent with the Court's initial decision.

## II. ARGUMENT

### A. It is Clear – and Already Determined by this Court – that Price Remained Subject to Change After Shipment

Section 351.401(i) requires Commerce to use the invoice date recorded in the producer's ordinary-course records. Commerce may select another date only if that date better reflects when the exporter or producer established the material terms of sale. Price is a material term, and the inquiry turns on when the parties reached a meeting of the minds on that price. *See Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1303, 1309 (Ct. Int'l Trade 2009). Here, the record establishes that price remained subject to change after shipment and was not final until Kazchrome issued the final invoice. Indeed, this matter was established in the Court's first decision. *See* Slip Op. 26-68 at 24 ("The Court observes that Kazchrome's sales reconciliation revealed a difference between the provisional invoice total revenue amount and the final invoice total revenue amount. . . . 'Price and quantity are 'material terms,' and the discrepancy between the provisional and final invoice amounts in Kazchrome's sales reconciliation suggests that the Parties had not reached a 'meeting of the minds' as of the shipment date.") (citing Kazchrome's BCQR at Ex. B-4; Kazchrome's A-C SQR1 at Ex. B-4 (revised); Kazchrome's A-C SQR3 at Ex. B-4 (Revised 2)).

Kazchrome issued a provisional invoice before shipment, but the provisional amount was not the final price. After shipment and title transfer, TELF issued a final pricing schedule. Kazchrome then reviewed the proposed price and could object, in which case the parties were required to negotiate. If Kazchrome accepted the price, it communicated that acceptance by issuing the final invoice. The final invoice reflected the final price and determined the remaining payment or reimbursement. *See* Kazchrome's BCQR at C-18–C-19 and Exhibits B-4 and C-1, P.R. 89–90/C.R. 103–111; Kazchrome's First A-C SQR, Exhibit B-4 (Revised), P.R. 122/C.R.

179–188; Kazchrome's Third A-C SQR, Exhibit B-4 (Revised 2), P.R. 175/C.R. 319–324; Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Sales Verification Report at 5–7, P.R. 227/C.R. 482.

The contractual right to object confirms that the price was not final at shipment. The contract required Kazchrome to sign TELF's pricing schedule only if Kazchrome had no objection; otherwise, the parties were to negotiate and conclude the schedule. Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259. A price that remains subject to objection and negotiation after shipment has not been established on shipment date.

Commerce's own record findings reinforce this chronology. At the preliminary stage, Commerce identified title transfer—an event after shipment—as the point relevant to final price, and used shipment date only because it believed the title-transfer dates were unavailable. Preliminary Margin Calculation Memorandum at 3, P.R. 188/C.R. 331; *see also* Preliminary IDM at 15, P.R. 184. Commerce's verification report later recorded Kazchrome's explanation that title transfer triggered TELF's pricing schedule and that Kazchrome established the final price by accepting the schedule and issuing the final invoice; the report noted that the explanation aligned with the reviewed sales-process documentation. Sales Verification Report at 5–7, P.R. 227/C.R. 482; *see also* Sales Verification Exhibits, Exhibits SVE-3 and SVE-4, P.R. 213/C.R. 443–456.

Commerce emphasizes that the record contains no correspondence showing actual renegotiation after shipment. That misses the point. The record shows that price remained open after shipment, that provisional and final prices in fact differed, and that the final price was reflected only when Kazchrome issued the final invoice. *See* Kazchrome's BCQR, Exhibit B-4, P.R. 89–90/C.R. 103–111; Kazchrome's First A-C SQR, Exhibit B-4 (Revised), P.R. 122/C.R. 179–188; Kazchrome's Third A-C SQR, Exhibit B-4 (Revised 2), P.R. 175/C.R. 319–324.

Section 351.401(i) does not permit Commerce to choose shipment date merely because Kazchrome ultimately accepted a later price without dispute. The final invoice date is the latest possible date of sale and the date linked to the final price in Kazchrome's records.

**B. The Provisional Invoice Did Not Establish the Final Price**

The provisional invoice was exactly that—provisional. It supported shipment and an advance payment, but it did not state the final price. The final price was calculated later, could differ from the provisional amount, remained subject to Kazchrome's review and objection, and was reflected in the final invoice. *See* Kazchrome's BCQR at C-18–C-19 and Exhibits B-4 and C-1, P.R. 89–90/C.R. 103–111; Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Sales Verification Report at 5–7, P.R. 227/C.R. 482.

Commerce's reliance on *Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 625 F. Supp. 2d 1339, 1372–77 (Ct. Int'l Trade 2009), does not support its reliance on shipment date here. *Habas* involved a predetermined late-delivery penalty. Here, the final sales price remained unresolved after shipment and could change for [

]. Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Kazchrome's BCQR at C-6–C-54 and Exhibit B-10, P.R. 89–90/C.R. 103–111; Final BPI Memorandum at 5–6. Those later price changes were reflected in the final invoice, not at shipment.

Commerce's expense-by-expense discussion likewise does not establish that price was final at shipment. Whether an adjustment was foreseeable, previously reported, or ultimately accepted does not change the sequence reflected in the record: provisional price before shipment, possible price changes after shipment, and final price on the final invoice. Because shipment did

not finally set the price for which the U.S. customer ultimately paid, it cannot be the date of sale. Nothing in Commerce's Remand Redetermination changes this.

### C. Title Transfer Confirms That Shipment Date Is Incorrect

Kazchrome's reported title transfer date further corroborates the central point of when terms are set because it triggered TELF's issuance of the final pricing schedule *after* shipment. Kazchrome reported title-transfer information in the [ ] included in its sales reconciliations and provided supporting documentation in its sales-trace and verification exhibits. *See* Kazchrome's BCQR, Exhibit B-4, P.R. 89–90/C.R. 103–111; Kazchrome's Third A-C SQR, Exhibit B-4 (Revised 2), P.R. 175/C.R. 319–324; Kazchrome's October 16, 2024 Submission, Attachment I, P.R. 158/C.R. 259; Sales Verification Report at 6–7, P.R. 227/C.R. 482; Sales Verification Exhibits, Exhibit SVE-4, P.R. 213/C.R. 443–456.

Commerce observes that a limited number of title-transfer dates covered many shipments and therefore did not provide a uniform transaction-specific date for every U.S. sale. *See* Remand Redetermination at 21–23, 52–53; Final BPI Memorandum at 5. Even if that reflects Commerce's reason not to use title transfer itself as the date of sale, that reasoning does not support using shipment date. Title transfer occurred after shipment and began the process that led to the final price. This Court noted as much in its review of the record evidence, *i.e.*, that "{a}fter the merchandise was shipped and TELF paid a portion of the provisional invoice, TELF issued a notice of title transfer and sent a pricing schedule to Kazchrome, which prompted Kazchrome to issue a final invoice with the final price if the Parties did not need to renegotiate it. . . . The final invoice price could differ from the provisional invoice price due to adjustment factors that had to be considered as the sale and shipment progressed, such as insurance and financing expenses. . . . Kazchrome provided Commerce with its sales reconciliation, which reflected the difference

between the provisional invoice total revenue amount and the final invoice total revenue amount." Slip Op. 26-68 at 20-21 (citing Kazchrome Sales Verification Report at 5–7, PR 227/CR 482; Kazchrome's October 16 Submission at Attachment I, PR 158/CR 259; Kazchrome's AQR at 22, PR 70-76/CR 40-51; Kazchrome's BCQR at Ex. B-4, PR 89-90/CR 103-111; Kazchrome's A-C SQR1 at Ex. B-4 (revised), PR 122/CR 179-188; and Kazchrome's A-C SQR3 at Ex. B-4 (Revised 2), PR 175/CR 319-324). Further, as this Court observed, "Kazchrome's sales reconciliation was not the only evidence on the record that was provided to support the title transfer dates. For example, Exhibit SVE-4 of Kazchrome's Sales Verification Exhibits provided a number of documents marked 'Notice of Transfer of Ownership' that provided a 'Date of Title Transfer.' Kazchrome's Sales Verification Exhibits at Ex. SVE-4." Slip Op. 26-68 at 24. If nothing else, this provides further confirmation that the shipment date does not represent the point at which the material terms are established.

Kazchrome's requested date remains the final invoice date. It is the presumptive date under section 351.401(i), the latest possible date of sale, and the date on which Kazchrome's records reflected the final price. *See* Kazchrome's Second A-C SQR at 1–3, P.R. 150/C.R. 250–253; Kazchrome's Sales Case Brief at 1–6, P.R. 237/C.R. 488. Title transfer matters only because it confirms that the price had not been finalized at shipment.

### D. The Remand Redetermination Remains Unsupported by Substantial Evidence and Contrary to Law

This Court has directed Commerce to address the record evidence showing that price remained open after shipment. Slip Op. 26-68 at 23-26; *see also Altx, Inc. v. United States*, 167 F. Supp. 2d 1353, 1374 (Ct. Int'l Trade 2001). That evidence is straightforward: Kazchrome issued only a provisional invoice before shipment; TELF issued the final pricing schedule after

title transfer; Kazchrome could object and require negotiation; provisional and final prices differed; and Kazchrome reflected the final price in the final invoice. Commerce's reliance on the absence of an actual objection and its discussion of individual adjustments do not establish that price was final at shipment. Rather, Commerce acknowledges "adjustments" were made to the price and states that "Commerce recognizes that the provisional and final invoice revenue amounts differ," but nevertheless disregards these facts because the changes "were not unintended expenses." Remand Redetermination at 48-49. In doing so, Commerce reaches a conclusion that is contradicted by substantial evidence and creates an arbitrary timeframe to conduct the sales comparison.

## III. CONCLUSION

For the foregoing reasons, the Court should vacate the Remand Redetermination and again remand this case to Commerce with instructions for it to reconsider the date of sale. The record shows that price remained subject to change after shipment and that the final price was set only when Kazchrome issued the final invoice. Shipment date therefore cannot be the date of sale. Kazchrome respectfully requests that the Court remand with instructions to use final invoice date as the date of sale.

Dated: October 6, 2026

Respectfully submitted,

*/s/ Christine M. Streatfeild*

Christine M. Streatfeild
Nathaniel J. Halvorson
**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to TNC Kazchrome JSC*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the attached Comments in Opposition to Remand Redetermination, filed October 6, 2026, contains 2,364 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum 7,000 word count limitation set forth in the Standard Chambers Procedures.

Dated: October 6, 2026

Respectfully submitted,

*/s/ Christine M. Streatfeild*

Christine M. Streatfeild
Nathaniel J. Halvorson
**Baker & McKenzie LLP**
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to TNC Kazchrome JSC*